IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1016

Filed 6 August 2025

Mecklenburg County, No. 22CR367519-590

STATE OF NORTH CAROLINA

v.

ANTHONY KEITH BLACKBURN

Appeal by Defendant from a judgment entered 6 November 2023 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 June 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Taylor H. Crabtree, for the State.*
>
> *Ryan Legal Services, PLLC, by John E. Ryan, III, for the Defendant.*

WOOD, Judge.

Anthony Keith Blackburn ("Defendant") appeals from judgment following a jury verdict finding him guilty of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. On appeal, Defendant contends the trial court erred when it denied Defendant's Motion to Dismiss at the close of the State's evidence. After careful review of the record, we conclude Defendant received a fair trial free from error.

## I. Factual and Procedural Background

On 19 December 2022 Larry Johnson ("Johnson") was sleeping in the driver's seat of his Mazda CX7 as he did every night. As usual the car was parked in front of his friend's home in Charlotte, North Carolina. When sleeping, Johnson would cover his car with a tarp to maintain some privacy. In the early morning hours of 19 December 2022 people started banging on the outside of the car. Initially, Johnson thought it was someone that he knew but as the banging grew much harder, he realized something different was going on and began to open the door. As soon as the door opened two men pulled Johnson out of the car, pressed him against the outside of the car, and held a gun to his head. Three men in ski masks demanded Johnson's money, threatening to shoot him if he did not hand it over. He responded that he had no money so they would have to shoot him. The men then grabbed Johnson, pushed him around so that he faced the car, and stood behind him. One of the masked men then hit Johnson with a hammer. Defendant contends he hit Johnson on the back of the shoulder and then Johnson fell to the ground. Johnson testified that he was hit on the back of the head and neck, fell to the ground, and lost consciousness for a short time. When he regained awareness, the men were driving away in his car. Johnson called the police but did not seek medical attention.

A few hours later, at approximately 3:18 a.m., officers located the stolen car, which was on the side of the road with its hazard lights on. Officers observed an individual wearing a checkered shirt pacing in front of the car and waving a stick. Officers parked in front of the car and approached the individual later identified as

Defendant. During that time, the car backed up and drove away. Officers radioed the information concerning the fleeing vehicle so other available officers could respond and arrested Defendant, who remained at the scene.

Defendant was brought to the police station where he consented to an interview with detectives. During questioning, Defendant admitted that he and two friends, whom he referred to as Daniel and Owen, were at Johnson's car and had with them a hammer and a BB gun. Defendant stated he struck Johnson with the hammer because Johnson was yelling and reaching in his pants, which made him nervous. Defendant stated that he got into the car to get away from Johnson.

The next day, Johnson's neighbor informed him that he had seen Johnson's car a few streets away. Johnson called the police, who responded to the vehicle. The police processed the vehicle and noted the catalytic converter had been removed. After police left, Johnson found two ski masks and a hammer that did not belong to him, so he called the police back out to the scene. The police returned and conducted further analysis.

On 3 January 2023, Defendant was indicted on one count of robbery with a dangerous weapon and one count of conspiracy to commit robbery with a dangerous weapon. The matter came on for trial on 31 October 2023, and on 6 November 2023, the jury returned a verdict of guilty on both counts. Defendant was sentenced to 64 to 89 months of active confinement for robbery with a dangerous weapon, and 25 to

42 months of active confinement on the conspiracy charge to run concurrently. Defendant gave oral notice of appeal.

## II.  Analysis

Defendant raises one issue on appeal, whether the trial court erred by denying Defendant's Motion to Dismiss at the close of the State's evidence.  "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003).  In reviewing a motion to dismiss, our Supreme Court has instructed courts to apply

> long-established legal principles that the evidence must be considered in the light most favorable to the State upon a defendant's motion to dismiss a criminal charge, that the State is entitled to every reasonable inference from the evidence in the face of a defendant's motion to dismiss, and that evidence which supports a contrary inference is not determinative on a motion to dismiss[.]

*State v. Blagg*, 377 N.C. 482, 490, 858 S.E.2d 268, 274 (2021).

Defendant contends that the State could not establish the necessary elements to support the charges of robbery with a dangerous weapon or conspiracy to commit robbery with a dangerous weapon because the State failed to submit substantial evidence to show that the hammer used by Defendant was used in a way that endangered or threatened the life of Johnson.  We disagree.

North Carolina General Statutes § 14-87 defines robbery with a firearm or

dangerous weapon as, the unlawful taking, or attempted taking, of personal property while "having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened[.]" N.C. Gen. Stat. § 14-87(a) (2024). "If a weapon is not a firearm, then to be considered dangerous under this statute, the determinative question is whether the evidence was sufficient to support a jury finding that a person's *life* was in fact endangered or threatened." *State v. Williamson*, 272 N.C. App. 204, 211, 845 S.E.2d 876, 882 (2020) (cleaned up). "A dangerous or deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm." *State v. Morgan*, 156 N.C. App. 523, 529, 577 S.E.2d 380, 385 (2003) (cleaned up). However, the victim need not receive serious bodily injury. "[T]he State need only show that the [weapon] was used in a manner which is likely to cause death or serious bodily injury." *State v. Chavis*, 278 N.C. App. 482, 489, 863 S.E.2d 225, 230 (2021) (cleaned up). The "allegedly deadly character" of a weapon is generally one of fact to be determined by the jury. *Morgan*, 156 N.C. App. at 529, 577 S.E.2d at 385.

This Court has considered previously whether a hammer was a dangerous weapon stating, "[i]n determining whether a hammer was dangerous to [a] life . . . , you would consider the nature of the hammer, the manner in which the defendant used it or threatened to use it, and the size and strength of the defendant as compared to [the victim]." *State v. Jackson*, 85 N.C. App. 531, 532, 355 S.E.2d 224, 225 (1987).

- 5 -

In the *sub judice* case, taking the testimony in the light most favorable to the State, Defendant threatened Johnson with violence, while brandishing a hammer, if he refused to give up his money. When Johnson refused, stating he had no money, Defendant hit Johnson on the back of the head and neck from behind, knocking him to the ground and causing him to lose consciousness. At the time of this event, Defendant was a nineteen-year-old young man, and Johnson was in his mid-sixties. Defendant swung a metal hammer at Johnson with enough force to knock him to the ground and cause Johnson to lose consciousness. It is irrelevant that Johnson did not seek medical treatment after the attack. The State presented sufficient evidence from which a jury could find the hammer was used as a dangerous weapon. The trial court did not err in denying Defendant's motion to dismiss, thereby submitting the issue of whether the hammer was a dangerous weapon to the jury.

### III.    Conclusion

For the foregoing reasons, we conclude the trial court did not err in denying Defendant's motion to dismiss, thereby allowing the jury to determine whether Defendant used a dangerous weapon in the commission of a robbery. Thus, Defendant received a fair trial free from error. However, we note the judgment is dated 3 November 2023 instead of 6 November 2023 as recorded by the trial transcripts. Accordingly, we remand the judgment to the trial court for correction of the clerical error.

NO ERROR; REMANDED FOR CORRECTION OF CLERICAL ERROR.

Judges ARROWOOD and FLOOD concur.